## JOSEPH STRZEGOWSKI *v.* LILLIAN STRZEGOWSKI
[No. 41, April Term, 1938.]

*Decided June 14th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Marion A. Figinski,* for the appellant.

*Louis Silberstein,* with whom were *Harry K. Lott* and *M. William Adelson* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

Joseph Strzegowski and Lillian Strzegowski were married on June 2nd, 1935, in the City of Baltimore, and lived together in said city until on or about March 8th, 1937.

At the time of this marriage the husband and wife were both employed, and the latter continued to work until shortly before their first and only child was born, the date of the birth of the child not definitely appearing in the record. Upon their marriage they rented a two-room apartment located on the second floor of the dwelling in which the parents of the wife resided.

The husband at that time was earning $13 or $14 and the wife $16 per week, and the record indicates that the former for a while delivered his pay envelopes to the latter, who financed the household expenses. This arrangement, however, lasted only for a short period. The husband later changed his line of work, and thereafter secured employment as a crane operator, where he received a wage of $5.98 per day, and when regularly employed made an average of approximately $30 or $35 per week. At the time of the trial of this case, he was unemployed and lived at the home of his own parents, while his wife with her infant child continued to reside at the original place of abode of the couple.

The bill of complaint, which was filed on September 23rd, 1937, by Mrs. Strzegowski against her husband, after alleging her own conduct to have been that of an unerring spouse, her custody of the infant child, her total lack of income for its support as well as for the support of herself, and the earning capacity of her husband as evidenced by his latter employment, alleges an abandonment of her by her husband without just cause, with a declared intention to live with her no longer, and that the separation of the parties is beyond any hope of reconciliation. The prayer for relief is (a) that the complainant be awarded the custody of the infant child, (b) that she be decreed alimony *pendente lite,* counsel fees, and the costs and expenses incident to the suit,

(c) permanent alimony for her support, an allowance for the support of the child, and for general relief.

By his answer the husband denies the separation and living apart of the couple for the reason alleged in the bill, and sets forth that the true cause of such separation is because the complainant prefers to live with her parents, and will not live with him elsewhere.

In support of her contentions, Mrs. Strzegowski testified that her husband's conduct towards her began to change when she complained that he did not promptly return to their home when his day's work was over, and that, although at first he did place his pay envelopes in her hands, he was daily asking her for money, and grew angry with her when she tried to keep him from wasting it; that she thought he gambled, but he claimed he needed money for incidental expenses and car fare; that the net result was that he repossessed practically all of his wages and spent them on himself, and that she paid the household expenses and rent with her own earnings, until eight months after her marriage, when she gave up her employment in anticipation of the birth of her child; that he beat her because she would not have marital relations with him two weeks after the baby was born, and in January, 1937, he beat her and "made my eye black and my face was swollen"; again he hit her after an argument over his tie pins which she had put away, and on March 7th, 1937, after further argument about his not coming home from his work instead of going to his parents' home each day, he grew angry, got his clothes and said "he is tired of arguing with me and doing for the baby," and left the home. The following morning, he returned, stating that he would stay if his wife wanted him to do so, to which proposition the latter readily agreed. She further testified that the husband stayed, but shortly thereafter his father called at the home of her parents, whereupon a general argument growing out of the marital troubles of the young couple took place, and resulted in a fight between the two fathers-in-law, in which the husband sided with his father, and, follow-

ing the latter's order, left the premises with him. Later in the day the husband returned with his brother and got all of his clothes, stating, after entreaties by her, her mother and sister, that he stay, that he would not do so; that the next morning he returned again, pulled the baby from her arms, grasped her by the neck and pushed her in a corner, whereupon her mother called the police patrol. The uncontradicted testimony found in the record is to the effect that since that date the parties have ceased to live together, and that the husband has contributed nothing to his wife or child's support except such sums as he has been compelled to contribute to the latter's support, under the provisions of sections 87A, 87B, 87C, 87D and 87E, of article 27 of the Code, as added by Laws 1931, ch. 448, to which reference is hereafter made.

In her testimony, Mrs. Strzegowski is corroborated by her sister and father as to the physical fact that they both saw the former with a swollen eye and face, about the time the complainant charges that her husband inflicted the alleged blow from which the alleged injuries resulted, but neither of them saw such blow administered by the husband, and it follows that their testimony, at best, is speculative. In any event, the alleged vicious act was afterwards condoned. The husband denies the attack, and, generally, denies all ill treatment of his wife, but it is significant that in his testimony he admits that on at least one occasion he "drug her". "Q. What do you mean you drug her? A. I just shoved her. Q. When you shoved her did she fall up against anything. A. No, she just laid on the bed and started screaming and hollowing. Q. When you shoved her, did you shove her onto the bed? A. She was right near the bed and she fell on the bed."

Without further prolonging the statement of facts in this case, except, for the purposes of this opinion, to add that, with the above exception, all of the testimony of the complainant and witnesses in her behalf is emphatically denied by the respondent and witnesses in his behalf. It is admitted by the latter, or at least nowhere in the

record denied, that he has not since returned to his wife and child, and that meanwhile he has contributed nothing towards her support.

That at times he did pay the paltry sum of three dollars per week toward the support of his child is shown and admitted, but it should be borne in mind that he did not voluntarily make these payments. To the contrary, he did not make them until complaint was lodged against him under the provisions of the sections of article 27 of the Code, above mentioned, and the record reveals that it has been necessary to cite him before the state's attorney for Baltimore City, on at least one occasion, for delinquency, although, as has been noted, at times he was earning from $30 to $35 per week, and that at the time of the hearing before the chancellor below, he had paid nothing since October 1st, 1937, the hearing having taken place in March, 1938.

It is shown that on two occasions, when he was brought before the said state's attorney, he proposed to his wife that she leave the apartment rented from her parents, and that he would then secure a home for his family and resume marital relations, but there is no evidence in the record that he ever, at any time, negotiated to secure a new place of abode, or communicated with his wife with such design in mind, except on the two occasions mentioned, on which occasions he was under the stress of legal process for his own delinquency. Mrs. Strzegowski testified that the two suggestions were made by her husband in an angry manner, and that she refused to entertain them seriously because, as viewed from his past record and continued conduct towards her, she doubted the *bona fides* of the offers.

Based substantially upon the above state of the testimony, the chancellor passed a decree directing the husband to pay, through the probation department of the Supreme Bench of Baltimore City, the sum of $5 per week as permanent alimony to his wife, plus the additional sum of $2 per week for the support of the infant child, accounting from the date of the decree, subject to

the further order of the court, and, in addition thereto, the sum of $50 to the solicitor for the complainant as counsel fee, and the costs of the proceedings. And it is from that decree that this appeal is taken.

As evidenced by numerous decisions of this court, it is the well settled law of this state, that a decree for permanent alimony may not be granted except upon grounds sufficient to support a decree for a divorce *a vinculo matrimonii* or *a mensa et thoro*. *Ayres v. Ayres*, 163 Md. 388, 163 A. 707; *Simmont v. Simmont*, 160 Md. 422, 153 A. 665; *Outlaw v. Outlaw*, 118 Md. 498, 84 A. 383; *Silverberg v. Silverberg*, 148 Md. 682, 691, 130 A. 325; *Melson v. Melson*, 151 Md. 196, 134 A. 136; *Walker v. Walker*, 125 Md. 649, 94 A. 346; *Polley v. Polley*, 128 Md. 60, 97 A. 526; *Mann v. Mann*, 144 Md. 518, 523, 125 A. 74.

It therefore follows that, in order to establish her right to permanent alimony, it is incumbent upon the complainant in this case to prove such a state of facts as would entitle her to a divorce if she were asking for it; as "to justify the living apart of a married couple the causes must be grave and weighty, and such as render the performance of marital duties impossible". *Taylor v. Taylor*, 108 Md. 129, 134, 69 A. 632, 634; *Childs v. Childs*, 49 Md. 509; *Hawkins v. Hawkins*, 65 Md. 104, 3 A. 749; *Schindel v. Schindel*, 12 Md. 294.

Causes justifying the chancellor in decreeing a divorce *a mensa et thoro*, as defined in section 39 of article 16 of the Code of this state, are, (a) cruelty of treatment; (b) excessively vicious conduct, and (c) abandonment and desertion, and, disregarding the two first mentioned causes above set forth, the question we are now called upon to decide is whether, under the facts herein detailed, there has been such abandonment and desertion by the husband of his wife, as would justify the chancellor in decreeing a divorce, had the latter been sought?

To answer that question in the negative we would be forced to the conclusion that a young husband, twenty-three years of age, in the absence of evidence that his

wife has been influenced or prejudiced against him by her parents, or that he has been, in any manner, molested or interfered with by them in the affairs of his own home, can shirk his responsibility for the support of his wife and infant child, under the frivolous guise or pretense of dissatisfaction with an environment of his own making.

It is true, and we are not unmindful of the fact, that the husband is legally the titular head of the family, and that when he meets his responsibilities, as such, and desires to change his domicil, it is but the plain duty of his wife to acquiesce in such proposed change. But to hold that he can, under the circumstances incident to the case before us, leave the then place of abode without first establishing a new one for his wife and baby; that he can meanwhile totally ignore his duty to support and maintain them, and that, finally, when met with authoritative procedure for the enforcement of that duty, he can hide behind the flimsy defense he now sets up, as amplified by a promise to provide a new home, if his wife will first abandon that of the present, would be imposing a trust in her husband on the part of the wife, which no court of justice would, or ought to, impose. Good faith, in our opinion, requires that in such a situation the husband should have done more than the offending spouse in the case now under consideration has done, to inspire that confidence in him by his wife which he now seeks to invoke.

In other words, had he, since his own act of voluntary separation, been meanwhile voluntarily supporting them both, and had he have meanwhile arranged for the rental or procurement of new quarters in which he and his family would live, the case would present an entirely different aspect. And if then the wife persisted in remaining in an apartment within the home of her parents, a different conclusion would be justified.

As has been seen, the decree from which the appeal is taken is not one for divorce; its design is to enforce a recalcitrant husband to meet his own legal responsibility. He can yet meet that responsibility, and thereby secure

a revocation of the decree against him, by compliance with the solemn vows he took when he was married. For, as was observed in *Schindel v. Schindel, supra,* quoting Lord Stowell in pronouncing a judgment of the Ecclesiastical Court: "When people understand that they must live together, except for a very few reasons known to the law, they learn to soften, by mutual accommodation, that yoke which they know they cannot shake off; they become good husbands and good wives from the necessity of remaining husbands and wives; for necessity is a powerful master in teaching the duties which it imposes."

*Decree affirmed, with costs to the appellee.*