## AMANDA M. HAWKINS vs. JOHN W. HAWKINS.

*Divorce a mensa et thoro—Testimony of Witnesses manifest-
ing Bias for the Party producing them—Cruelty of Treat-
ment—Excessively Vicious Conduct—Husband and Wife—
Decree of Separation—Separate property of Wife—Care
and Custody of the Children.*

A wife will not be granted a divorce *a mensa et thoro* upon the ground
of alleged cruelty of treatment, and excessively vicious conduct on
the part of the husband, if it shall appear .that she has been like-
wise guilty of cruel treatment towards him.

While in an action for a divorce, the testimony of the domestic
servants who were employed about the house of the parties during
the time of their cohabitation, cannot be repudiated altogether on
account of the decided bias manifested for the party producing
them, it must be considered with caution, and taken always with
due allowance, according to the bias displayed.

But where the testimony of such witnesses is apparently given with
reasonable fairness, and especially if they are confirmed in their
statements in regard to facts capable of corroboration, there is no
reason why they should not receive credit, even upon circumstances
incapable of extrinsic confirmation.

To authorize the granting of relief on an application for a divorce
*a mensa et thoro*, for cruelty of treatment, or excessively vicious
conduct, the ground of complaint must be grave and weighty,
showing to the entire satisfaction of the Court the existence of
such a state of things as renders it impossible that the duties of
the married life can be discharged.

Where the complaint is of cruel treatment, the mere austerity of
temper, petulance of manner, rudeness of language, a want of civil
attention, even occasional sallies of passion, if they do not threaten
bodily harm, do not constitute such cruelty of treatment as to
warrant the Court in pronouncing a decree of separation. But a
series of acts of personal violence, or a menace to the safety of life,
limb or health, or any determined threats of serious bodily hurt,
furnish sufficient ground for a separation.

No abusive or reproachful words by the wife will justify the husband
in assaulting and beating her.

Where a decree of separation from her husband is granted to the wife, she will be entitled to have awarded to her the full and entire control of her separate property, free from all control or beneficial enjoyment thereof by the husband during the period of their legal separation.

And the care, education and custody of the children, where they are young and need a mother's care, will be awarded to her, she having ample means, and nothing being shown to make it improper that she should have the care and custody of them.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This appeal was taken by the complainant from a decree of the Court below dismissing her bill of complaint. The bill prayed for a divorce *a mensa et thoro* from her husband, upon the ground of alleged cruelty of treatment, and excessively vicious conduct on his part, for the custody of her children, the restoration of her separate property, and for an injunction restraining the defendant from interfering with the complainant or her property, or from coming upon the place, "Mount View," where she resided with her children, and which belonged to her before her marriage with the defendant. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, RITCHIE, and BRYAN, J.

* *Alexander H. Robertson,* and *Thomas W. Hall,* for the complainant.

*John I. Yellott,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by the appellant, the wife, against the appellee, the husband, to obtain a divorce *a*

---

* Mr. Robertson, although present, took no part in the argument.

*mensa et thoro,* upon the ground of alleged cruelty of treatment, and excessively vicious conduct, on the part of the husband. The plaintiff, by her bill, also prays to be awarded the care and custody of her children, and the separate and exclusive control and benefit of her property.

The bill was filed on the 22nd of May, 1884, and it alleges that the parties were married on the 29th of April, 1876, and that four children have been born of the marriage, and which children, it appears, reside with and are cared for by the mother. The bill charges that the plaintiff has, upon repeated occasions since her marriage, been subject to and made to suffer from the cruel personal violence inflicted upon her by the defendant, and so cruel and vicious had become his treatment of her that the same was no longer bearable; and that by reason of such past misconduct of the defendant, and his repeated threats to do violence to the plaintiff, the latter is in great fear of further bodily injury being inflicted upon her, if not relieved by the Court. The defendant answered the bill, denying all the charges of cruel treatment and excessively vicious conduct on his part, and severely recriminates, by charging " that he has, for a period of eight years, suffered and endured, with patience and forbearance, insults, outrages, personal and bodily violence, and a course of cruel and unfeeling conduct inflicted upon him, and pursued towards him, by the plaintiff." That the plaintiff had assaulted him on divers occasions with knife and pistol, and time and again driven him from his home at all hours of the night, and compelled him to seek shelter and food in a neighbor's house, or take his rest in a barn on the premises, or elsewhere about the farm; and that he was induced to bear all such cruel treatment from the plaintiff from a sense of Christian duty and a desire to avoid bringing scandal upon his home. These general allegations are followed up by a large enumeration and specification of occasions and circumstances to show the manner in which

the defendant had been treated by his wife. And if we were required to decide the case simply upon the mutual accusations of the parties, we should have no alternative but to dismiss the plaintiff's petition, upon the ground that, by reason of her own wrong and dereliction of duty to her husband, she could have no standing in Court. But the case must be decided upon the proof, and not upon the mere allegations of the parties; and while the proof produced certainly discloses a state of domestic discord and strife distressing to contemplate, yet it fails to establish the truth of the severe recriminatory charges of the husband, though it certainly does show that the wife is not without blame.

The testimony is voluminous, and much of it is conflicting in its details. It comes largely from the domestic servants who were employed about the house of the parties during the time of their cohabitation. Some of these witnesses manifest a decided bias for the party producing them, while others testify with more apparent fairness, and without showing any decided feeling for the one side or the other. And while the testimony of such witnesses cannot be repudiated altogether, it must be considered with caution, and taken always with due allowance, according to the bias displayed for the party in whose behalf the witness testifies. In cases like the present, it is from necessity that the testimony of such witnesses has to be resorted to; for ill-usage, of the kind imputed in this case, is of a domestic nature, and does not generally occur in public, or in the open face of day. As was said in the case of *Westmeath vs. Westmeath,* 2 *Hagg. Eccl. Rep. Suppl.,* 74, it generally takes place in secret, sometimes in the retirement of night. Servants, more especially those about the wife's person, are alone likely to witness those acts. Even by them the acts themselves are not very frequently seen, and can only be inferred from the accompanying circumstances or the resulting consequences, or

be proved by the husband's acknowledgments. Where, therefore, the testimony of such witnesses is apparently given with reasonable fairness, and especially if they are confirmed in their statements in regard to facts capable of corroboration, there is no reason why they should not receive credit, even upon circumstances incapable of extrinsic confirmation. In this case, however, we are not altogether dependent upon the testimony of domestic servants for proof of some of the most material facts involved. There are other witnesses in the case, and some of the most material facts are either disclosed or confirmed by them.

The statute, (Code, Art. 16, sec. 26, as re-enacted by the Act of 1872, ch. 272,) making cruelty of treatment, and excessively vicious conduct, distinct causes for granting divorces *a mensa et thoro*, furnishes no definition of what will constitute cruelty of treatment, or excessively vicious conduct, to bring the case within the purview of the law; and the statute thus failing in the definition, we are required to resort to judicial precedent and definition, to ascertain what state of facts will authorize the granting of relief for the causes mentioned. And the rule to be gathered from all the authorities, that furnish safe guides upon this delicate subject, is, that the ground of complaint must be grave and weighty, showing to the entire satisfaction of the Court, the existence of such state of things as render it impossible that the duties of the married life can be discharged. Where the complaint is of cruel treatment, the mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention, even occasional sallies of passion, if they do not threaten bodily harm, do not constitute such cruelty of treatment as to warrant the Court in pronouncing a decree of separation. But a series of acts of personal violence, or a menace to the safety of life, limb, or health, or any determined threats of serious bodily hurt, have always been held sufficient ground for a separation by the common law,

and that is the law to which we must appeal upon this subject. *Barrere vs. Barrere*, 4 *John. Ch.*, 189. Here we do not understand the counsel for the plaintiff to insist that there is any such evidence of excessively vicious conduct on the part of the defendant, within the meaning of the statute, as to entitle the plaintiff to a decree for separation on that ground alone; but they do insist that the charge of cruel treatment of the plaintiff is amply supported by the evidence, and this Court is of opinion that such contention is well founded.

The evidence shows that both parties have great infirmities of temper. The plaintiff, with apparently strong attachment for her husband, had become morbidly jealous, and was very exacting of him, and disliked exceedingly his leaving her for any other society or pleasure, and the strong manifestation of this disposition on her part naturally produced irritation and petulance on his. Then, too, his management of her property, and the control and authority exercised by him, not perhaps always with exact moderation, over her children, and especially the child by her former husband, were often subjects of strife between the parties; and unfortunately, upon some of these occasions, the husband yielded to what would appear to be an ungovernable temper, and did, what the law does not justify a husband in doing, that is, inflict violent personal injury upon his wife. The defendant is spoken of by one of his witnesses, his brother-in-law, the Rev. Mr. Hunter, as a radically good man, with a thousand infirmities and faults; and among his faults, he speaks of his habit of drinking, and that the plaintiff had represented to him, the witness, that the defendant drank excessively. He says, "I had some fear that he did drink somewhat injudiciously, to the prejudice of his health, and I consulted an eminent physician of Baltimore, who expressed the opinion that a man of his temperament would better abstain entirely." What particular effect this unfortunate habit

may have had in exciting and bringing about the domestic broils and conflicts, described by some of the witnesses, is not distinctly shown; but it may be safely assumed that such habit was not without its malign and disturbing effect upon the domestic relations. Of the repeated altercations between the parties, it is not easy to determine from the evidence who was originally most in fault; but no abusive or reproachful words by the wife will justify the husband in assaulting and beating her. And putting aside all doubtful testimony, there still remains abundant evidence to show that the defendant did inflict blows upon his wife with a buggy whip, and with such severity as to leave the marks of the blows upon her person. It is also clearly shown that, upon another occasion, he seized his wife by the hair of her head and dragged her from one room to another, if he did not in fact inflict other and severer blows upon her at the time, according to the testimony of some of the witnesses. These occurrences are not only testified to by eye witnesses examined on the part of the plaintiff, but the narratives of those witnesses have received strong corroboration in the testimony of witnesses examined for the defendant himself. In addition to this, we have the defendant's own acknowledgments to the fact of having inflicted violence upon his wife, made, in the one instance, in the presence of the Constable, Green, and in the other, in the presence of witness Poteet. And Mrs. Henderson, a witness wholly unimpeached, while not an eye-witness to the actual infliction of any personal violence on the plaintiff by the defendant, yet she is able to give full details, not only of what she has heard, but of what she has seen of marks and bruises on the person of the plaintiff, which she was informed at the time were, and supposed them to be, the results of ill-treatment by the defendant.

The proof of these facts brings the case directly within the principle and ruling of the somewhat similar case of

*Holden vs. Holden,* 1 *Hagg. C. R.,* 453, decided by Sir WILLIAM SCOTT. In that case, after stating the facts as proved by the witnesses, the learned Judge proceeded to say: "On these facts, the Court has to decide, whether the conduct of the husband amounts to that *sœvitia* which authorizes a separation. On this point the Court has had frequent occasions to observe, that every thing is, in legal construction, *sœvitia,* which tends to bodily harm, and, in that manner, renders cohabitation unsafe ; whenever there is a tendency only to bodily mischief, it is a peril from which the wife must be protected ; because it is unsafe for her to continue in the discharge of her conjugal duties ; and to enforce that obligation upon her, might endanger her security, and perhaps her life. It is not necessary, in determining this point, to enquire from what motive such treatment proceeds.—It may be from turbulent passion, or sometimes from causes which are not inconsistent with affection, and are indeed often connected with it, as the passion of jealousy. If bitter waters are flowing, it is not necessary to enquire from what source they spring. If the passions of the husband are so much out of his own control, as that it is inconsistent with the personal safety of the wife to continue in his society, it is immaterial from what provocation such violence originated. The law does not require that there should be many acts. The Court has expressed an indisposition to interfere on account of one slight act, particularly between persons who have been under long cohabitation ; because, if only one such instance of ill-treatment, and that of a slight kind, occurs in many years, it may be hoped and presumed that it will not be repeated. But it is only on this supposition that the Court forbears to interpose its protection, even in the case of a single act ; because, if one act should be of that description, which should induce the Court to think, that it is likely to occur again, and to occur with real suffering, there is no rule, that should restrain it from considering

that to be fully sufficient to authorize its interference. Here there are repeated acts, diffused over many years, which put the wife in danger, and exposed her to great bodily harm. It is not necessary that the conduct of the wife should be entirely without blame; for the reason which would justify the imputation of blame to the wife, will not justify the ferocity of the husband." The same principles, and the same reasoning, were repeated and fully adopted, in the subsequent case of *Westmeath vs. Westmeath,* 2 *Hagg. Suppl.,* 1, in a judgment delivered by Sir JOHN NICHOLL.

Now, adopting the principles established in the matrimonial causes just referred to, the evidence in this case would seem to be of the amplest character to entitle the complainant to relief. The charge of cruelty of treatment is fully made out, and that entitles the plaintiff to a decree for a separation; that decree, however, under the statute, will be subject to be revoked by the Court, at any time thereafter, upon the joint application of the parties.

And having concluded that the wife is entitled to a decree of separation from her husband, the remaining questions to be considered relate to the disposition of the wife's property, and the care and custody of the children. With respect to the property belonging to the wife, she will be entitled to have the full and entire control of it awarded to her, free from all control or beneficial enjoyment thereof, by the husband, during the period of the legal separation of the parties. And with respect to the children, we think the care, education and custody of them, should be awarded ·to the mother. They are young, and need a mother's care; and the mother has ample means, and there is nothing shown in the case to make it improper that she should have the care and custody of them. This part of the decree will be subject to the future order of the Court, as provided by the statute.

It follows that the decree of the Court below will be reversed, and the cause remanded, that a decree may be passed in accordance with the foregoing opinion.

*Decree reversed, and*
*cause remanded.*