AMELIA McCABE ET AL. *vs.* CHRISTIAN P. BROSENNE ET AL.

*Advancements—Evidence—Gifts.*

If a woman's father releases, or gives, to her husband a part of the purchase money for a tract of land conveyed to the husband by him, such gift is presumed to be an advancement to the daughter out of her share of his estate, and upon his death intestate, is to be charged against the daughter, when there is no evidence to rebut this presumption

The evidence in this case examined and held to show that a certain part

of the purchase price of a farm conveyed by the deceased intestate to the husband of his daughter was an advancement to her.

A gift of personal property from a father to two of his children held upon the facts to have been fairly made in order to compensate them for valuable services rendered to him and was not intended to be an advancement.

*Decided March 5th, 1908.*

Appeal from the Circuit Court for Howard County (THOMAS, C. J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Frank V. Rhodes, C. M. White, Karl A. M. Scholtz,* and *R. T. Gill* for the appellants.

*James A. C. Bond* and *Francis Neal Parke,* for the appellees.

BURKE, J., delivered the opinion of the Court.

Henry Frederick Brosenne, a resident of Howard County, died intestate in January, 1903, and left surviving him as his only heirs at law eight children, two sons and six daughters, and one grandchild, a minor daughter of a deceased son. He died seized of a large and valuable real estate situated in that county. The children were all of full age. The larger part of his real estate was subject to a mortgage of nine thousand dollars held by Mrs. Gabriella MacKubin. Portions of the real estate were rented or leased at the time of the intestate's death, and the lessees or tenants were indebted to him for rent. Two judgments had been entered against him in the Circuit Court for Howard County, and these were unsatisfied at the time of his death.

On the 14th day of September, 1903, a bill was filed for the sale of the real estate, and for the appointment of receivers to collect the rents due, or which might thereafter become due, from the tenants. This bill was filed by some of the

heirs at law of the deceased. All the other heirs, as well as the mortgagee, Mrs. MacKubin, and her husband were made defendants. The bill alleged that the real estate was not susceptible of partition without material loss and injury to the parties entitled to interest therein, and that in order to make division of said interests it would be necessary to sell the property, and divide the proceeds among the parties according to their several interests.

Amelia, one of the children of the intestate and one of the respondents in this case, had married John H. McCabe, and she and her husband had for a number of years resided in Virginia. In the ninth paragraph of the bill it is alleged that Henry Frederick Brosenne, during his life time, purchased a farm in Fauquier County, Virginia, and thereafter conveyed the same to the defendant John H. McCabe, husband of Amelia McCabe, for the purported consideration of twelve thousand dollars, whereas in truth and in fact the sum of four thousand dollars of said consideration of twelve thousand dollars was released and given by Henry Frederick Brosenne to his daughter Mrs. McCabe by way of advancement; and it was charged that Mrs. McCabe should not be entitled to claim a share in the real estate descended from her father, unless she should elect to bring such advancement, or the value thereof at the time the same was made into hotchpot with said estate. In their answers both Mr. and Mrs. McCabe deny this advancement,—Mrs. McCabe stating "that she absolutely denies having received either directly or indirectly the sum of four thousand dollars, or any other sum as an advancement from her father, Henry F. Brosenne."

The mortgage to Mrs. MacKubin was subsequently assigned to Messrs. James A. C. Bond and F. Neal Parke, who consented that a decree be passed for the sale of the property, reserving their lien under the mortgage upon the proceeds of sale.

On the fourth day of December, 1903, Elizabeth A. Stansfield, one of the daughters of the deceased, and her husband Benjamin L. Stansfield filed a bill against the administrators

of the deceased and all the other heirs at law, in which they asked that the property be sold and the proceeds distributed among the parties in interest; that receivers be appointed to manage the real estate; and that the personal estate of the deceased be administered under the supervision of the Court. The seventh paragraph of this bill charges that a large part of the estate of Henry Frederick Brosenne had been fraudulently taken possession of by some of his children and has been concealed by Christian P. Brosenne and Lydia Linthicum for the purpose of depriving the complainants and some of the defendants of their interest in the real and personal property of the said deceased. The answers of Christian P. Brosenne and Lydia Linthicum denied that they, or either of them had fraudulently taken possession of any of the personal estate of said deceased, and they further denied that either have fraudulently taken possession of or concealed any of the personal estate of said deceased for the purpose of depriving any one of his or her interest therein. The answers of all the defendants were filed to both bills, and replications were also filed. It is unnecessary to notice the answers of the other defendants, as they have no important bearing upon the questions here presented.

Testimony was taken to prove the averments required to authorize a decree for sale and the appointment of receivers, and on the 25th of February, 1904, the Court decreed that the real estate be sold and appointed trustees to make the sale. It also appointed receivers of the real estate, pending the sale and the ratification thereof, with authority to collect the rents. The Court by its decree expressly reserved for further decree and appropriate action all other questions and matters between the parties to the cause and arising thereunder and not expressly disposed of by the decree, without prejudice to any of the rights of the respective parties to the suit in the distribution of the proceeds of the real estate sold under the decree. The trustees sold the real estate and the receivers made certain collections. The sales made by the trustees were reported to and finally ratified by the Court.

An expense account was stated which was also finally ratified and confirmed, by which it appeared that there was quite a large balance for distribution among the parties in interest.

Testimony was then taken upon the questions arising under the ninth paragraph of the first bill, and under the seventh paragraph of the second. These questions are first, the alleged advancement to Mrs. McCabe; and secondly, the alleged fraudulent possession and concealment by Christian P. Brosenne and Lydia Linthicum of assets of the estate of Henry Frederick Brosenne, deceased. A large mass of testimony, which is very conflicting, was taken upon these issues. The lower Court decreed that the advancement alleged in the bill had been made to Mrs. McCabe and directed the auditor in the distribution of the proceeds of the real and personal estate to treat the sum of four thousand dollars as an advancement to her. It further decreed that the property, which the ninth paragraph of the second bill charged to have been fraudulently retained and concealed by Christian P. Brosenne and Lydia Linthicum was their absolute property and was not to be accounted for in these cases. The appeals before us were taken against this decree.

By *section 31, Article 46 of the Code, 1904,* it is declared that any child or children of the intestate or their issue having received from the intestate any real estate by way of advancement, may elect to come into partition with the other parceners on bringing such advancement, or the value thereof at the time such advancement was received, into hotchpot with the estate descended; but such child or children or their issue shall not be entitled to claim a share by descent without bringing such advancement, or the value thereof as aforesaid, into the common stock or hotch pot if there be any other child or children unprovided for. And *section 124, Article 93, Code, 1904,* provides that if any child or descendant shall have been advanced by the intestate by settlement or portion the same shall be reckoned in the surplus; and if it be equal or superior to a share such child or descendants shall be excluded, but the widow shall have no advantage by bringing

such advancement into reckoning; and maintenance or education or money given without a view to a portion or a settlement in life shall not be deemed an advancement. The object of these provisions is to secure equal and exact justice as far as may be among the children of the intestate by equalizing their shares in the distribution of his estate.

In *Dilley et al.* v. *Love et al.*, 61 Md. 603, it is said that our statutes do not "attempt to define what shall constitute an advancement or to designate the mode in which it shall be made, or the evidence by which it shall be established; but in these respects the Courts both in this country and in England have uniformly given a liberal construction to such enactments in order to enforce the cardinal doctrine which they announce, that in all such cases equality is equity.   *   *   *   By the decision in *Graves et al.* v. *Spedden*, 46 Md. 527, and the other decisions in this Court there cited, it is settled that in this State as in England that gift of money or property by a parent to a child is presumptively an advancement, but that this presumption may be repelled by evidence proper for that purpose; in other words whether such a gift takes the character and legal properties of an advancement, or those of a full and absolute gift without a view to a portion or settlement, *depends on the intention of the donor*, and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, *or of the donee's admissions afterwards, or by proof of facts and circumstances from which the intention may be inferred.   *   *   *   Again, an advancement to a husband by his father-in-law is an advancement to his wife. The advancement set up in *Stewart and wife et al.* v. *Patterson's Executors et al.*, 8 Gill, 46, was to the husband of a daughter."

If Henry Frederick Brosenne at the time he executed and delivered to John H. McCabe on June 10th, 1897, the deed for the Virginia farm released and gave to him, or to Mrs. McCabe, four thousand dollars of the purchase price of said farm as her portion of his estate, such gift must be treated in this case as an advancement; because if such gift were made the

law presumes it to have been an advancement, and there is no evidence in the record to change, or repel this presumption. Upon this branch of the case the issue is solely one of fact. Are the facts alleged in the ninth paragraph of the first bill true? If true, there can be no doubt that under the well settled law of this State they constitute an advancement of four thousand dollars to Mrs. McCabe, which sum must be so treated in the distribution of the estate of her deceased father. We have carefully examined the voluminous testimony contained in the record. It is too lengthy to be reviewed in detail, and no good result would be subserved by incorporating in this opinion a critical discussion of the utterly irreconcilable testimony found in the record. This Court has repeatedly said that where the question involved is one depending entirely upon the evidence "no good result can possibly arise from mere recapitulation of the evidence. It is enough for the Court to announce the conclusion it arrives at." *Sterling* v. *Sterling*, 64 Md. 138; *Moore* v. *McDonald*, 86 Md. 321; *Hiss* v. *Weik*, 78 Md. 439.

We might well rest upon this rule, and affirm the decree appealed from, as we are satisfied from a careful consideration of the evidence that the conclusion reached by the Court below is supported by the weight of testimony upon both questions involved; but, as this rule is more honored in the breach than in the observance, we will depart from it somewhat, and consider the general nature and purport of the evidence. In December, 1880, Henry Frederick Brosenne bought a large tract of land in Virginia for which he paid twelve thousand dollars. Amelia McCabe and John H. McCabe were placed by him in possession of this farm under some arrangement the exact nature of which we are unable from the testimony to say. At the time of the purchase, Mr. Brosenne paid six thousand dollars in cash, and created a lien upon the land for the balance of the purchase money. On June 10th, 1897, he conveyed the farm to John H. McCabe for a recited consideration of twelve thousand dollars. It is stated by McCabe that the property was to be conveyed to

him for ten thousand dolllars, and by others it is said that the real consideration was nine thousand dollars; but it is conceded that no money was paid at the time of the conveyance of June 10th, 1897. At that time McCabe executed and delivered to Brosenne his five notes, each for the sum of one thousand dollars, payable in three, six, nine, twelve and fifteen years with interest at six per cent, and by the terms of the deed a vendor's lien was retained on the farm as security for the payment of these five thousand dollars, which the deed declares to be "the residue of the purchase money." Assuming the purchase price of the farm to have been twelve thousand dollars, as the deed recites, there was a deficiency of seven thousand dollars; if it were ten thousand dollars, as claimed by McCabe, the difference was five thousand dollars; and if nine thousand dollars was the real consideration, as stated by some of the witnesses, there was a balance of four thousand dollars to be accounted for. How was this difference in fact accounted for at the time? There is no certain explanation of this to be found in the record. The evidence shows that after McCabe took possession in 1880 the property was used as a stock farm. Large sums of money were advanced by Brosenne to him for the purchase of cattle, which was sold by McCabe, and the record shows that large sums from the sale of cattle were paid over to Brosenne. But there are no accurate accounts of the dealings between the parties disclosed by the evidence, and no satisfactory documentary evidence of the state of the accounts between them at the date of the deed of June 10th, 1897. This is admitted by McCabe. A settlement was no doubt made of the accounts between them at that time, but what it was, apart from the testimony of John H. McCabe, which will be presently examined, we do not know. But the evidence is clear, positive, direct, and, we think, satisfactory, that in this settlement Mr. Brosenne allowed to his daughter, as an advancement four thousand dollars in the purchase price of the farm. This is clearly and satisfactorily established by the testimony of one brother and three sisters of Mrs. MaCabe. Why the sum of four thousand dollars was

fixed upon we do not certainly know, but this is not material, if in fact that was the sum advanced. If we had the full and exact terms of the settlement this would no doubt appear. The question we are concerned with is not why Mr. Brosenne determined upon this sum, but did he in fact so determine.

The testimony of McCabe, as to the circumstances under which he acquired title to the farm is most unusual and remarkable. He states that in September, 1880, Mr. Brosenne proposed to buy a farm for him which was not to cost over twelve thousand dollars on condition that he would pay over to him all the clear money made on the farm, and when the clear money paid aggregated ten thousand dollars Brosenne was to convey the property to him; that he accepted this proposition, and Brosenne bought the Virginia farm for twelve thousand dollars. Under this arrangement there was a clear gift of two thousand dollars and the yearly interest of seven hundred and fifty dollars on the purchase price. McCabe lived on the property from 1880 to 1897 when Brosenne deeded him the farm. He testified that when the deed was made in June, 1897, Brosenne owed him twelve thousand eight hundred and six dollars and ninety-three cents, that in addition thereto he had paid taxes amounting to fourteen hundred dollars, and had also paid all of the insurance on the buildings. Notwithstanding the fact that he had largely overpaid for the farm he gave Brosenne his notes for five thousand dollars as part payment of the purchase money, and to secure their payment he created a vendor's lien upon the property. This testimony might possibly he true, but it is so unusual and improbable that in the absence of strong and convincing corroboration, the Court could not be expected to place much reliance upon it.

The property which Christian P. Brosenne is asked to account for under the second bill is the crops and personal property on the farm known as "Folley Quarters" in December, 1898; and that which Mrs. Linthicum is sought to be held responsible for is some household effects which she

stated were given to her by her father about the year 1889, and four notes of John H. McCabe which her father gave her in 1900. It is not pretended that there was any concealment about these gifts. They seem to have been generally known by the members of the family.

At the time these gifts were made Henry F. Brosenne, according to the weight of the evidence, was competent to make them, and it further appears that the gifts were made to compensate these two children in some measure for many years of faithful and devoted services rendered to their father. The fact is that the greater part of the estate over which this litigation has arisen is the product of the labors of Christian P. Brosenne and Mrs. Linthicum. For more than twenty-five years they had worked for their father without wages or any compensation for their services. In 1883 only two of his children were living with Mr. Brosenne on the large farm he was then renting. These were his son, Frederick, and his daughter, Lydia, now Mrs. Linthicum. Christian was married, and was living on one of his father's farms. Frederick was killed, and his father, being in great distress, appealed to Christian to come home and help him on the farm, telling him that if he would come he would remember him for it; that he would reward him. Christian came and worked upon the farm until his father's death in 1903. Mrs. Linthicum never left her father's home. She was married in 1895, but her father would not consent to her leaving home.

Asked to describe the character of the services he rendered to his father, Christian P. Brosenne testified: "The services were that you get up there at five o'clock in the morning and get the men out, and get them to work, and work all day on the farm with them, and do the hauling in winter time, selling the produce and all that kind of work, everything that is necessary on a farm. I attended to the management of the farm. I had full charge of the hands after my brother Fred was dead up to the time father died, and I worked on the farm the same as one of the men." He further said: "I went back there and took charge in 1883 and managed the place from

that time up until he turned the property over to me, and I never received any salary. I got my board and clothes, the same as a boy that was bound out. As to any of the funeral expenses, he paid them, he knew that I had nothing to pay them with. I did not have a dollar. I never got any money from him only when I had to have a suit of clothes, or my wife had to have them for the children. I never used a dollar of his money for pleasure or anything like that. I done as much hard work as any man in Howard County for him. I have not been able to do it for myself." Mrs. Lithicum attended to the dairy work. They had forty or fifty cows. She printed butter and skimmed the milk and looked after the churning, mixed the milk for curd and got it ready for the market. Two nights in the week she got up at midnight to see that everything was loaded on the wagon. She attended to the house work in the home and to her father's room, looked after his clothes and waited on him. In execution of the promise he had made to his son in 1883 that he would remember him, and as a reward to these faithful children he gave them the property which these appellants would now take from them.

We find no proof that these gifts were obtained by fraud or undue influence exerted upon Mr. Brosenne, and being made, as stated in the careful opinion of JUDGE THOMAS filed in the Court below, "in response to the instincts of justice and the promptings of gratitude of which every unbiased man is sensible, and for the expressed purpose of compensating two of his children for many years of faithful, devoted and unrewarded services to him," the decree appealed from will be affirmed.

*Decree affirmed, the costs in each appeal*
*to be paid by the appellants therein.*