KATE G. COHEN *v.* SAM COHEN

[Nos. 46, 47, April Term, 1936.]

*Decided June 10th, 1936.*

The cause was argued before BOND, C. J. URNER, OF-

Futt, Parke, Sloan, Mitchell, Shehan, and Johnson, JJ.

*Avrum K. Rifman*, for the appellant.

*Benjamin L. Freeny*, for the appellee.

Mitchell, J., delivered the opinion of the Court.

On July 4th, 1934, the appellant, plaintiff below, and the appellee, defendant, were married in the City of Alexandria, Virginia. At the time of the marriage, the appellant was about thirty-six, and the appellee fifty-three years of age; and prior to the date of the marriage, on May 8th, 1934, a child was born to the parties by virtue of their previous relationship.

At that time, the defendant was engaged in the tailoring business with a son by a former marriage, at Aberdeen, Maryland, a distance of approximately 28 miles from the City of Baltimore, and with his son motored daily between the two points. He lived with his son and several other of his children on Reisterstown Road, in Baltimore, which was but a few blocks away from the domicile of his last wife, on Norfolk Avenue, in said city. The principal business of the father and son came to them through a tailoring concession permitted by the authorities at Fort Hoyle, a government reservation.

The record is a voluminous one, and, in our opinion, contains much testimony on both sides which could readily have been eliminated. Characteristic of the form of controversy it reveals, the remaining testimony which does have important bearing upon the case is in striking conflict. Reconciling this conflict as best we can, we gather that the union from the beginning was not congenial to the parties concerned. The husband is shown to be a Russian immigrant, who has lived in this country since 1901, and is illiterate; while, on the other hand, the wife before her marriage was employed in the courthouse in Baltimore City for more than 20 years, and is evidently a woman of some education.

Upon their marriage, the husband took up his abode

with his wife at her Norfolk Avenue residence. According to his version, he slept at the home nearly every night for the first eight months following the marriage; he then proposed to his wife to establish a residence at Fort Hoyle, which would be more convenient to his work. He admits that the number of nights he spent at the home gradually dwindled, and because his business required it, he began to stay several nights a week at the Fort. This statement is strenuously denied by the wife, who contends that her husband from the beginning was an infrequent visitor to the home; that at first he slept there one or two nights a week; that between September 30th and December 2nd, 1935, he did not spend a single night with her; and that thereafter he did not sleep at the home on an average of more than once a week. She denies that she was ever offered a home at Fort Hoyle, or refused to go there to live, and stoutly maintains that she pleaded with him at all times to live with her continuously, without avail; and that, down to the date of the filing of her bill of complaint, he had never eaten a meal with her in the home. The corroboration as to each of these contentions is about evenly balanced, and it is almost impossible to reach a conclusion as to the truth of the matter through an analysis of the testimony, if equal credence is given the testimony of each witness.

Concretely, the outstanding circumstances must be controlling, and they indicate that the husband gradually shortened his stay at the home of his wife, until he did not average more than a night a week; meanwhile spending the rest of his time at the home of his children on Reisterstown Road, and, at intervals, at Fort Hoyle. All the while, however, he kept in touch with the Norfolk Avenue home, paid some bills towards its maintenance, gave his wife money at irregular intervals, purchased and delivered groceries to her, in accordance with her request, visited the home at times when he did not sleep there, and continued marital relations with her. Furthermore, aside from his apparent indifference and neglect, as herein indicated, there is no evidence in the record that at

any time he struck her or abused her, except on one occasion when he told her to "go to hell"—this latter expression he denies.

Such was the existent connubial status of the parties, when, on January 25th, 1936, the appellant filed in the Circuit Court No. 2 of Baltimore City a bill of complaint against the appellee, in substance alleging the marriage, the birth of the child, the domicil of the parties in Baltimore City for more than two years prior to the institution of the suit, and alleging that the appellee without just cause therefor had deliberately and willfully abandoned and deserted her and their infant child by a series of interrupted periodical absences from the home of the parties.

The bill further charges: "That the defendant has been guilty of cruelty of treatment and excessively vicious conduct towards the plaintiff, in deliberately and willfully absenting himself from their home, located at 2914 Norfolk Avenue, leaving the said plaintiff with an infant child alone and unprotected for days and nights, so that she was required to turn to the members of her family for some protection. That the defendant has deliberately and willfully refrained from providing adequate and regular support for the said plaintiff and their infant child, when at the same time the said defendant maintained and provided for another home in the City of Baltimore. That the defendant's deliberate acts in casting aside the plaintiff and their infant child, and failing to provide regular and adequate support, and in deliberately neglecting and ignoring her, is of the most vicious character of conduct and course of treatment, which was calculated by the defendant to, and in fact did, cause her great anguish, made her extremely nervous, and undermined her general health."

The relief prayed is: (a) For the award of permanent alimony sufficient to properly and adequately support the plaintiff and infant child, and for the custody of said child. (b) For alimony *pendente lite*, counsel fee, and the court costs of the proceedings. (c) And for general relief.

For the purpose of showing the circumstances under which the alleged separation of the parties took place, it may be illuminating to here produce the testimony of the wife as follows:

"Q. The day after you filed your bill, tell the court what Mr. Cohen brought to the home and what took place? A. He came in—the door was locked—about 8:30 and every one was asleep in the house. I was feeding the baby his breakfast and heard someone rapping and I went to the door, and I had the baby's food in my hand, and when I got to the door I did not know who it was until I opened the door, then Mr. Cohen had the milk bottles in his hand. I could not tell him right then and there because I did not want to wake any one in the house. My hands were full, and his hands were full. When he came in I continued feeding the baby. I didn't say anything to Mr. Cohen because I did not want to stop feeding the baby, I wanted to finish getting him his breakfast first. After I finished giving the baby his breakfast, Mr. Cohen said he was going to go out and buy a dozen eggs. I said, 'Sam'—I spoke in a whisper because every one was asleep, on Sunday morning people like to sleep later— I said, 'Sam, after today you cannot make your weekly visits in this house.' I said, 'I have been at your mercy long enough, and from now on we are both at the mercy of the court, and it is up to the judge to say whether you have been a husband to me, the right kind of a husband.' He said, 'What?' I said, 'I went to see my attorney.'

"Q. What was his answer to that? A. Nothing. He picked up his coat and went out."

As briefly as possible, we have reviewed the facts in the case. It now becomes necessary to apply the law to the same. There are two appeals in one record in this case, and they are taken from the action of the lower court as follows:

(a) Its decree of March 5th, 1936, dismissing the bill of complaint, and ordering that the defendant pay the costs of the proceedings, including a fee of fifty dollars to the counsel for the plaintiff.

(b)   Its order of March 30th, 1936, denying a petition filed by the plaintiff, subsequent to the dismissal of the suit, praying that the defendant be required to pay the costs of the stenographer's transcript, the printing of the record, and the cost of a brief filed on behalf of the plaintiff, for the purpose of an appeal to this court, as well as counsel fee for her solicitor and for alimony pending said appeal; which denial, however, reserved to the lower court the matter of said counsel fee until the determination of the cause in this court.

In the order stated, we will proceed to deal with these appeals.

The basic relief sought in the instant case is that of permanent alimony, and in this state it has been uniformly held that to entitle a wife to a decree for permanent alimony, such facts must be alleged, and proved as would entitle her to a decree of divorce, either *a vinculo matrimonii* or *a mensa et thoro*. *Wallingsford v. Wallingsford,* 6 H. & J. 485; *Dunnock v. Dunnock,* 3 Md. Ch. 140, 146; *Outlaw v. Outlaw,* 118 Md. 498, 503, 84 A. 383; *Polley v. Polley,* 128 Md. 60, 62, 97 A. 526; *McClees v. McClees,* 162 Md. 70, 158 A. 349; *Hoffhines v. Hoffhines,* 146 Md. 350, 126 A. 112; *Kirkwood v. Kirkwood,* 165 Md. 547, 170 A. 180.

Applying this principle to the facts in the instant case, the question resolves itself into the simple one of whether these facts are such as would have entitled the wife to a decree of divorce, either *a vinculo matrimonii* or *a mensa et thoro;* neither of which, however, is prayed for in the bill.  It would result in a useless prolongation of this opinion were we to undertake to cite from the many former and recent opinions of this court to reach the conclusion that, under the facts herein disclosed, the plaintiff is not entitled to a decree of divorce, either limited or absolute.

Briefly, the reasons for such conclusion are logically summarized in the oft-quoted opinion of Judge Parke in *Short v. Short,* 151 Md. 444, 135 A. 176, wherein it is stated: "Legal cruelty must be such conduct on the part

of the husband as will endanger the life, person, or health of the wife, or will cause reasonable apprehension of bodily suffering. It should be of such a nature as to render cohabitation physically unsafe to a degree justifying a refusal to continue it. Marital neglect, indifference, a failure to provide as freely as the wife may desire in dress or in conveniences, sallies of passion, harshness, rudeness, and the use of profane and abusive language towards her are not sufficient, if not in manner and degree endangering her personal security or health. *Childs v. Childs,* 49 Md. 514; *Hawkins v. Hawkins,* 65 Md. 108, 3 A. 749; *Bounds v. Bounds,* 135 Md. 220, 108 A. 870." *McKane v. McKane,* 152 Md. 515, 516, 137 A. 288; *Wendel v. Wendel,* 154 Md. 11, 139 A. 573; *Proudfoot v. Proudfoot,* 154 Md. 585, 141 A. 395; *Gellar v. Gellar,* 159 Md. 236, 150 A. 717; *Bonwit v. Bonwit,* 169 Md. 189, 181 A. 237; *Brett v. Brett,* 169 Md. 704, 182 A. 305. And in the case of *Singewald v. Singewald,* 165 Md. 136, 166 A. 441, 446, in further enunciating the principle under which courts are guided in divorce cases, Judge Offutt says: "It is not the function of the courts in such cases as this to arbitrate family quarrels, but to determine upon the evidence whether either of the parties has been guilty of such conduct as would make a continuance of the marital relation inconsistent with the health, self-respect, and reasonable comfort of the other. *Nelson on Divorce and Separation,* sec. 331; *Short v. Short, supra; McKane v. McKane, supra.* And in determining whether in a given case the evidence supports a charge of cruelty justifying a divorce, it is well settled in this state that such relief, with its resulting destruction of the home, severance of family ties, and division of the allegiance of the children between embittered and hostile parents, should not be granted except upon substantial grounds established by convincing evidence."

As measured by the standard fixed in the above quoted cases, as well as the cases cited, we can find no substantial testimony in the record which would warrant us in

granting the appellant a divorce, and it must follow that she cannot maintain her suit for permanent alimony.

As will be hereinafter shown, the husband is heavily involved, financially, and, under such circumstances, he can be neither expected nor compelled to maintain a home with such environment as may have been hoped for by his wife when she married him. Nevertheless, he has not abandoned and deserted her, nor has he been guilty of any act of physical cruelty toward her. To the contrary, he has kept in touch with his wife and child, and contributed to their support and the maintenance of their home. In addition to this, he continued his marital relations down to the date on which the suit against him was filed.

It is lamentable that the husband has been to some extent neglectful and indifferent toward his wife, and that through this phase of his conduct she may have been deprived of that degree of happiness which should be the goal of every union. But from the record before us we cannot find such conduct on the husband's part as would justify the relief now sought by the wife.

The remaining question for our consideration pertains to the order of the lower court as hereinbefore set forth. That order, it will be noted, is final only in so far as it denies a petition that the husband be required to pay the costs of the stenographer's transcript, the printing of the record, and the cost of a brief filed on behalf of the plaintiff, for the purpose of an appeal to this court, and alimony pending the appeal. It reserves to the chancellor the matter of a counsel fee to the solicitor for the appellant, for services on appeal, until the final determination of the cause by this court, and hence, in the latter respect, not being final in its nature, is not properly before us for review.

In *Coles v. Coles*, 2 Md. Ch. 341, it is stated: "The general rule is clear and undisputed, that the wife, in these cases, is a privileged suitor, and that the court, without inquiring into the merits, and whether she be plaintiff or defendant, will allow her alimony, *pendente*

*lite*, and a sum for carrying on the suit. The rule is believed to be almost universal, to allow a destitute wife, who has been abandoned, or is living apart from her husband, temporary alimony, and the means of prosecuting or defending a suit for divorce, and this without any inquiry whatever, into the merits. * * * But if the wife has under her own control the means of carrying on the suit, and maintaining herself, pending the litigation, the reason of the rule fails, and the rule itself fails also." *Hood v. Hood*, 138 Md. 355, 113 A. 895; *Roth v. Roth*, 143 Md. 142, 122 A. 34.

In the instant case, it is shown that the only income of which the wife is possessed is a monthly rental of thirty-five dollars, collected by her from a tenant occupying a part of the Norfolk Avenue property belonging to her, and in which she resides. This property is subject to a mortgage held by a building and loan association, under the terms of which a weekly payment of $7.40 is required. She has, in addition to the equity she holds in the above property, but $500 in bank, and she is unemployed. The property of the husband is shown to consist mainly of shop machinery, of little value, some of which is subject to liens. His total assets are, approximately, $1,000, as against approximate liabilities of $2,800. It is further shown that some of his creditors are reducing their claims to judgments against him.

It follows, therefore, that neither of the parties is in ready position to meet the demands incident to the litigation of their unfortunate disagreements, without sacrifice.

However, the husband has an earning capacity, and, notwithstanding the conclusion which we have reached, we are of the opinion that the obligation to pay the costs of this appeal and alimony pending appeal, including a reasonable counsel fee incident to the appeal, should be placed upon him.

> *Decree affirmed. Order reversed, and cause remanded for further proceedings in accordance with this opinion, with costs to the appellant.*