RUTH RAMSBURG STIRN *v.* IRVIN S. STIRN

[Nos. 21 and 22, January Term, 1944.]

*Decided March 23, 1944.*

The causes were argued before SLOAN, C. J., DELA-
PALINE, COLLINS, MARBURY, and BAILEY, JJ.

*Wendel D. Allen* and *Charles E. Hogg*, with whom
were *Armstrong, Machen, Allen & Eney* on the brief,
for Ruth Ramsburg Stirn.

*Jerome A. Loughran* for Irvin S. Stirn.

BAILEY, J., delivered the opinion of the Court.

There are two appeals in this record. The first, No.
21, is an appeal by Ruth Ramsburg Stirn from a decree
of the Circuit Court for Howard County dismissing
her bill of complaint against Irvin S. Stirn, her husband,
in so far as the same prayed for permanent alimony
and for the custody and guardianship of the six minor
children born of their marriage. The second, No. 22, is
an appeal by Irvin S. Stirn from an order of said court
directing him to pay the costs of the appeal in No. 21,
counsel fee of $100 to his wife's solicitors, and alimony
*pendente lite* of $15 per week during the pendency of
the appeal.

The bill of complaint alleges in substance that the par-
ties were married on May 10, 1921: that they lived to-
gether in Howard County until September 26, 1941;
that six children, ranging in age from six to nineteen
years, born of said marriage, were still living; that for
some years prior to September 26, 1941, her husband
treated her with great cruelty, harshness and brutality,
at times striking and beating her and that his conduct
became so intolerable that she was obliged, on Septem-
ber 26, 1941, to leave his house with her children and
seek the protection of her parents; that since that time
he has sent her $10 each week, which is insufficient to
provide for the support and maintenance of herself and
children in accordance with their station in life; that

her husband is a prosperous farmer and the owner of a large amount of real and personal property; that she has been a faithful, affectionate and chaste wife and that her conduct has always been above reproach.

The prayers of the bill are for the guardianship and custody of the infant children, for permanent alimony, for alimony *pendente lite*, for counsel fee and costs of suit, and for general relief.

The husband answered, denying the allegations of cruelty and alleging that his wife, at various times during their married life, had thrown household utensils at him and that he had, in defending himself, grabbed her.

The testimony is voluminous and we shall not attempt to repeat it in detail. It discloses a series of disagreements between the parties, starting soon after the birth of the first child, continuing intermittently during the years and culminating in the attack on September 19, 1941, a few days before the separation. The early quarrels usually ended in the wife being shoved or struck by her husband. On one occasion a neighbor, Bassler, saw Mr. Stirn grab Mrs. Stirn and throw her to the floor of the porch. Three of the children testified to several occasions when Mr. Stirn struck his wife. After the assault on September 19 Mrs. Stirn went to the home of a neighbor, Mrs. Grace Wolfe, and was there attended by Dr. Burgtorf. She was in a highly nervous condition, one ear and one finger were bleeding, and she complained about her back or spine. The doctor testified that on this occasion she was bruised over the right hip and had scratches on her arm and knee. Without attempting to give the circumstances leading up to each particular assault, the evidence discloses that during the course of their married life Mrs. Stirn was subjected to the following acts of physical violence by her husband: kicked at various times and once kicked in the rectum; pushed against pipes and other objects; slapped in the mouth; hit in the back; head pushed through screen door; chased into yard; thrown to the porch floor;

and picked up by her feet and stood on her head. At the time of the hearing she was forty-two years old and her husband was fifty-nine. In May, 1940, Mrs. Stirn had submitted to a major operation, involving a cervical amputation and an outlet repair operation. Thereafter, instead of treating her with more tender care, her husband's assaults became more frequent.

The husband's accusations against the wife are of a trivial nature; that during their arguments she would throw objects at him, including a bottle-capper which cut his leg; that on one occasion he took a knife from her and that on another occasion she threatened him with a heatrola shaker.

Three of the children testify in corroboration of the wife's testimony as to many of the earlier assaults and say that in practically every instance the arguments were started by the husband, and that the wife was acting in self defense.

We shall not attempt any further analysis of the testimony, bearing in mind that this court said in *McCabe v. Brosenne*, 107 Md. 490, at page 496, 69 A. 259, at page 261: "that, where the question involved is one depending entirely upon the evidence, 'no good result can possibly arise from a mere recapitulation of the evidence. It is enough for the court to announce the conclusion it arrives at'." We will only add that on September 26, 1941, Mrs. Stirn left the home, after her husband had told her to get out, and that all of the children went with her voluntarily.

The chancellor in his opinion states that the suit is brought under the provisions of Section 14 of Article 16, Code, 1939, conferring upon courts of equity jurisdiction to hear and determine all causes for alimony and that Section 85 of Article 16, Code of 1939, is not applicable. This section confers upon the several equity courts of this State original jurisdiction in all cases relating to the custody or guardianship of children. We cannot agree with this conclusion of the chancellor. The bill of complaint presents a good cause of action under

both sections, praying first for relief under Section 85 and secondly for relief under Section 14. General Equity Rule No. 30, Code, 1943 Supplement, page 1190, permits the joinder in one bill of as many causes of action, cognizable in equity, as the plaintiff may have against the defendant. Such joinder was proper in this case. The chancellor erred in refusing to act upon the question of the guardianship and custody of the infant children. In discussing Section 85, this court in the case of *Barnard v. Godfrey*, 157 Md. 264, 145 A. 614, 615, quotes the said section and then states:

"From this language it will be seen that courts of equity in this state have full power, and it is their duty to determine who shall have the custody, control, and guardianship of minor children, and who shall be charged with their maintenance and support, when applied to by any of the persons mentioned in the statute; and this without regard to the question of whether or not the parents of said child or children have been divorced or are living apart. This section is declaratory of the inherent power of courts of equity over minors, and in the exercise thereof it should be exercised with the paramount purpose in view of securing the welfare and promoting the best interest of the children."

It is the well settled law of this State that a decree for permanent alimony may not be granted except upon grounds sufficient to support a decree for divorce, either *a vinculo matrimonii* or *a mensa et thoro*. *Strzegowski v. Strzegowski*, 175 Md. 53 58, 199 A. 809, and cases there cited. Recognizing this law, the plaintiff has charged the defendant with cruelty of treatment, which is the first ground for a divorce *a mensa et thoro* set out in Section 41, Article 16, Code, 1939. The general rule, as stated in 27 *C. J. S., Divorce*, Sec. 25, page 544, is that: "Depending on the circumstances of each case and the character and condition of the parties, it is generally sufficient and necessary, to constitute cruelty warranting a divorce, that there be actual personal violence or conduct causing a reasonable apprehension of it, or such

a course of treatment, apart from bodily violence, as endangers life, limb or health, and renders cohabitation unsafe or intolerable."

This court has said, in approving the general rule, in *Hastings v. Hastings,* 147 Md. 177, at page 181, 127 A. 743, at page 744: "Mere austerity of temper, petulance of manner, rudeness of language, even occasional sallies of passion, if they do not threaten bodily harm, do not constitute such cruelty of treatment as will be ground for divorce. But a series of acts of personal violence, or a menace to the safety of life, limb, or health, or any determined threat of serious bodily hurt are sufficient ground. *Daiger v. Daiger,* 2 Md. Ch. 335; *Childs v. Childs,* 49 Md. 509; *Hawkins v. Hawkins,* 65 Md. 104; *Shutt v. Shutt,* 71 Md. 193, 17 A. 1024, 17 Am. St. Rep. 519."

It has been held that a single act of violence may constitute such cruelty of treatment as to justify a divorce *a mensa et thoro,* if it indicates an intention to do serious bodily harm or is of such a character as to threaten serious danger in the future. *Levering v. Levering,* 16 Md. 213; *Appel v. Appel,* 162 Md. 5, 158 A. 65.

In a number of cases decided since the decision in *Hastings v. Hastings, supra,* this court has defined legal cruelty by the husband to be such conduct on his part as will endanger the life, person or health of the wife, or will cause reasonable apprehension of bodily suffering. *Short v. Short,* 151 Md. 444, 135 A. 176; *McKane v. McKane,* 152 Md. 515, 137 A. 288; *Wendel v. Wendel,* 154 Md. 11, 139 A. 573; *Gellar v. Gellar,* 159 Md. 236, 150 A. 717; *Singewald v. Singewald,* 165 Md. 136, 166 A. 441; *Bonwit v. Bonwit,* 169 Md. 189, 181 A. 237.

Applying the above general principles to the present case we must conclude that the repeated assaults by the defendant and particularly the assault on September 19, 1941, are such acts of personal violence as to endanger the person and health of the wife and thus constitute legal cruelty.

We feel that the evidence in this case definitely marks the husband as the aggressor. While the wife may have been intemperate in much of her conversation with her husband, mere words can never afford an excuse for a husband's striking his wife. It is said in *Hawkins v. Hawkins, supra* [65 Md. 104, 3 A. 751], "but no abusive or reproachful words by the wife will justify the husband in assaulting and beating her."

Nor can we find in the record evidence of misconduct on the part of the wife sufficient to invoke the rule that a divorce will not be granted on the ground of cruelty when the cruelty was provoked by the misconduct of the plaintiff. 27 *C. J. S., Divorce*, Sec. 56, page 599; *Payne v. Payne*, 178 Md. 681, 16 A. 2d 165; *Clatterbuck v. Clatterbuck*, 150 Md. 648, 133 A. 316; *Collier v. Collier*, 182 Md. 82, 32 A. 2d 469.

We cannot escape the conclusion that the evidence in the record is sufficient to establish that the husband has been guilty of cruelty of treatment and that such cruelty is of such a nature as to justify the granting of a divorce *a mensa et thoro*. It follows, as a matter of course, that the chancellor erred in refusing to grant permanent alimony to the wife. And as we have already indicated he likewise erred in not disposing of the custody and guardianship of the minor children. From the testimony in the record we are of the opinion that their custody should be awarded to the wife and that ample provision should be made for their support by the husband. The amount of the permanent alimony and support for the minor children will be left to the determination of the chancellor upon the remanding of these proceedings. That portion of the decree awarding Mrs. Stirn alimony *pendente lite*, counsel fee and costs of suit will be affirmed.

While in this case the wife has a modest income, the husband is the owner of valuable real estate and has a large investment income. In addition he is a prosperous farmer. The law is well settled that where the wife is without funds, or has only a very small amount of prop-

erty and income, the husband should be required to pay alimony *pendente lite,* counsel fee and costs of suit. *Hood v. Hood,* 138 Md. 355, 113 A. 895; *Daiger v. Daiger,* 154 Md. 501, 140 A. 717; *Cohen v. Cohen,* 170 Md. 630, 187 A. 104; *Timanus v. Timanus,* 178 Md. 640, 644, 16 A. 2d 918; *Saltzgaver v. Saltzgaver,* 182 Md. 624, 35 A. 2d 810. The order in No. 22 should, therefore, be affirmed.

> *Decree in No. 21 affirmed in part and reversed in part, and cause remanded for further proceedings in conformity with this opinion, with costs to the appellant. Order in No. 22 affirmed, with costs to the appellee.*