653 A.2d 521

**In re ADOPTION/GUARDIANSHIP NO. 3155 IN the CIRCUIT COURT FOR HARFORD COUNTY.**

No. 776, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 8, 1995.

302

Barbara P. Day of Bel Air, for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, BISHOP and BLOOM, JJ.

BLOOM, Judge.

Appellant, Steven H., is a minor child who had been placed under the court-appointed guardianship of appellee, the Harford County Department of Social Services ("HCDSS"). This appeal on behalf of Steven is from a decree of the Circuit Court for Harford County appointing HCDSS and Steven's foster parents, Mr. and Mrs. H. (no relation to Steven), as Steven's co-guardians and changing Steven's last name to that of his foster parents.

The parties present us with the following issues, which we have reworded slightly:

1. Does the attorney appointed for the child in the previous termination of parental rights proceeding have standing to pursue this appeal?

2. When HCDSS has been granted guardianship of a minor child, under the provisions of the Family Law Article, can HCDSS subsequently be granted joint guardianship with the child's foster parents under § 13–702 of the Estates and Trusts Article?

3. Was the minor child entitled to notice and a hearing on the petition and answer filed in this case as to guardianship?

4. Can the surname of a child who is under the guardianship of HCDSS be changed under a guardianship decree or without petition, notice and opportunity for a hearing?

## Background

Steven Lewis H. was born on 9 July 1985. Fourteen months later, as a result of gross medical and physical neglect,

he entered the foster care system. On 11 June 1990, pursuant to Md.Code (1984, 1990 Repl.Vol.), § 5–313 of the Family Law Article (FL), the Circuit Court for Harford County terminated the rights of Steven's natural parents and granted HCDSS guardianship of Steven with the right to consent to adoption and/or long term care short of adoption. After Steven had been in the foster care system for more than six years, during which period he had resided with several foster families, HCDSS placed Steven with his current foster family on 4 August 1992. On 20 October 1993, pursuant to Md.Code (1974, 1991 Repl.Vol.) § 13–702 of the Estates and Trusts Article (E & T), HCDSS filed a petition requesting that Steven's foster parents be appointed co-guardians of Steven with HCDSS.

The court incorporated a Guardianship of the Person Agreement into the petition for co-guardianship. The terms of the agreement gave the foster parents authority to make all day-to-day decisions regarding Steven. The agreement required HCDSS's approval for life-threatening medical treatment and notification of any other "major decision" regarding Steven. The agreement also stated that HCDSS and the foster parents would co-petition the court to change Steven's last name to that of his foster parents. Additionally, a note from Steven, stating his desire to be adopted by his foster parents, accompanied the petition for co-guardianship.

The attorney who had been appointed by the court to represent Steven H. in the proceeding that terminated the parental rights of Steven's natural parents filed an answer to appellee's petition, contending that HCDSS had no authority to seek the appointment of another as a co-guardian of Steven following the termination of parental rights. After a hearing on the issue, the court entered a decree appointing the foster parents as co-guardians with HCDSS and changing Steven's last name to that of his foster parents. Steven's counsel filed a Motion to Alter or Amend the Judgment; when that was denied, she filed this appeal. HCDSS has filed a motion to dismiss the appeal.

## Motion to Dismiss

Appellee contends that this appeal should be dismissed because counsel for appellant has no standing to pursue the appeal. Appellee further argues that appellant's counsel is not representing Steven's interests, but is attempting to vindicate her own concept of the proper procedure to be followed in providing long-term care for children after the termination of their natural parent's rights.

██ The Family Law Article, under which the court granted HCDSS guardianship of Steven, states, in § 5-319(b):

*In general.*—Except as provided in subsection (g) of this section, a guardian with the right to consent to adoption, including a guardian with the right to consent to adoption who was appointed without the consent of the natural parents, shall file a written report with the court and give notice of the child's status to each natural parent of the child under the guardianship **and to the child's court-appointed counsel** if:

(1) a placement for adoption is not made within 9 months of the decree of guardianship;

(2) a placement for adoption is made within 9 months of the decree of guardianship, but there is a disrupted placement, and a new placement is not made within 120 days of the disrupted placement; or

(3) a final decree of adoption is not entered within 2 years after placement for adoption.

(Emphasis added.) Steven has been in the foster care system since 1986 and has not been adopted. Thus, as the court-appointed counsel for Steven, counsel was entitled to receive written reports documenting Steven's status in the foster care system. With respect to the reports documenting Steven's status in the foster care system, Maryland Rule D77(a)-(b) provides:

a. *Generally.* The court shall hold such hearing as justice may require.

b. *When Delay in Adoption.* The court shall hold a hearing when there is delay in adoption following a decree of guardianship and the filing of a guardian's report pursuant to Code, Family Law Article, § 5–319....

Therefore, the attorney appointed to represent the child in the proceeding to terminate the parental rights of the child's natural parents continues in the role of court-appointed counsel for the minor child until either adoption or long-term care short of adoption occurs.

### Joint Guardianship

Appellant contends that the circuit court overstepped its authority by granting Steven's foster parents co-guardianship of Steven with HCDSS. We agree.

■ Guardianship is a statutory concept that is bounded by the legislative policy as expressed in the Maryland Code. *See Stirn v. Stirn,* 183 Md. 59, 64, 36 A.2d 695 (1944). In the proceedings under F.L. § 5–317, the court granted HCDSS guardianship of Steven with the right to consent to adoption or long-term care short of adoption. That grant terminated the natural parents' rights with respect to Steven and provided HCDSS with the rights and responsibilities of caring for Steven, with oversight by the court.

■ When a family seeks to provide foster care for a child, they must sign a contract with the agency delineating their rights and responsibilities to the child, the child's natural parents, the agency, and to their own family. Foster parents' sole responsibilities are defined as part of a contractual agreement with the agency; consequently, the rights and responsibilities of a foster parent are significantly less than those of a guardian.

■ The status of a co-guardian, therefore, is not the same as that of a person providing, pursuant to contract, long-term care short of adoption. The appointment of a co-guardian, of necessity, would diminish the authority and duties assigned by the court, through its statutory authority under

F.L. § 5–317, to HCDSS as the legal guardian of Steven. At the hearing on the petition to appoint co-guardians, counsel for appellee recognized the distinction between co-guardianship and long-term care short of adoption, stating:

> And it's the Department's position there is an inherent difference between long term care—that's substantive similarity, and, frankly, perhaps labeled different, but the guardianship is more permanent and seems a better message of stability than labeled long term care short of adoption.

Although counsel for appellee claimed that co-guardianship does not divest HCDSS of any right or obligation regarding Steven, he did acknowledge that guardianship "means something to medical care providers and educational institutions" that long-term care short of adoption does not mean. Additionally, according to the Guardianship of the Person Agreement included in the petition for co-guardianship, the foster parents would only be required to seek the approval of HCDSS for life-threatening medical procedures. The foster parents would be responsible for all other aspects of Steven's life, and would only have to notify HCDSS of major decisions they make regarding Steven, such as consenting for Steven to marry while still a minor.

■ Although we recognize the importance of providing Steven with a stable and loving environment, we also recognize the importance of adhering to the statutory boundaries developed by the Legislature. Pursuant to FL § 5–317, the court granted HCDSS guardianship of Steven with the right to consent to adoption or long-term care short of adoption; it did not confer the right to consent to co-guardianship. By limiting the avenues available to HCDSS, the Legislature expressed its intention that, short of adoption, the ultimate responsibility for Steven's health and well-being rests with HCDSS. Although HCDSS may prefer the phrase "co-guardian" to "long-term care short of adoption," it must abide by the statutory provisions set forth in the Family Law Article.

In creating the statutory scheme under which appellee was granted guardianship, the Legislature expressed its belief that the permanence and stability that HCDSS seeks to provide Steven with can be achieved through adoption or through long-term care short of adoption. The regulations governing foster care define "long-term foster care" as

> foster care provided for a child for whom a local department holds commitment or guardianship and for whom a local department has determined that neither reunification or adoption is likely despite reasonable efforts to obtain them, due to reasons such as:
>
> (a) The child's special needs are satisfied in a foster family which will not adopt the child, and a change in placement would be detrimental to the child;

COMAR 07.02.11.03. That definition accommodates the wishes of Steven and the requirements of his foster family by providing stability and continued resources from HCDSS, while satisfying the statutory requirement that ultimate responsibility for the child remain with HCDSS.

### Notice

■ Appellant's counsel contends that, as the court-appointed counsel for Steven, she was entitled to notice and a hearing on the petition for guardianship. We agree.

E & T § 13–702(b), under which the foster family and HCDSS sought co-guardianship, states that "[v]enue proceedings under this subtitle shall be as prescribed by the Maryland Rules. The contents of the petition and the manner of giving notice of the hearing on the petition shall be as prescribed by the Maryland Rules." The D Rules relate to guardianship and adoption proceedings. Specifically, Maryland Rule D74(a) provides:

> Upon the filing of a petition for guardianship or a petition for adoption, the court shall enter a show cause order unless all parties entitled to service of the show cause order under section d of this Rule have consented to the guardianship or adoption and waived notice of the filing of the petition or

unless the court has dispensed with the requirement of notice under section d of this Rule.

Subsection (d)(2) of Rule D74 requires that an attorney appointed to represent a minor be served with a show cause order when a petition for guardianship or adoption has been filed. Md.Rule D74(d)(2). We conclude, therefore, that appellant's counsel was entitled to notice and a hearing regarding appellant's status.

## Name Change

Appellant's counsel also objects to that part of the decree that changed Steven's last name to that of his foster parents.

■ At common law, a person—at least an adult—may adopt any name by which he or she may become known, as long as he or she does so consistently and non-fraudulently.

■ Md.Code (1957, 1994 Repl.Vol.), Art. 16, § 123, recognizes the existence of a court proceeding for a change of name and provides that "the true and legal name of the person shall be that determined by the order of the court." The procedure for judicial change of name is set forth in Md.Rules BH70 through BH75. Rule BH70(a) provides that an action for change of name shall be commenced by filing a verified petition setting forth the residence of the petitioner, the change of name desired, and the reason therefor; section (b) of Rule BH70 provides that a petition on behalf of an infant may be filed by a parent, a legal guardian, or a next friend. Rule BH72 provides for an order of publication unless the court, on motion by the petitioner, waives the requirement of publication. In this case, although HCDSS, as the child's guardian, requested a change of name, there was no petition for change of name. Indeed, change of name was never mentioned in the petition for appointment of co-guardians; the "Guardianship of the Person Agreement" between HCDSS and the foster parents indicated that the parties to the agreement agreed to request a name change, but the agreement was merely filed as an exhibit to the petition for co-guardianship and was not even incorporated by reference into the

petition. Moreover, there was neither an order of publication nor a waiver thereof. The court merely ordered that the child's last name be changed to that of the foster parents as part of the order appointing the foster parents co-guardians of Steven.

If for no other reason than the failure of the court to follow the procedural rules, the change of name must be vacated. More important, there is nothing in the record to suggest that a change of Steven's name to that of his present foster parents is in Steven's best interests. The agreement between HCDSS and the foster parents contemplates, but certainly does not guarantee, that Steven will remain with these same foster parents. If he is later placed with another family, however, this change of name may not prove beneficial to him. It appears that the court may have ordered the name change merely as an adjunct to the award of co-guardianship; since we are setting aside that co-guardianship order, any advantage to Steven in having the same last name as his current foster parents, *qua* guardians, no longer exists.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.